IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHRISTOPHER W. HANNA<br>    *Plaintiff* | §<br>§<br>§ | |
| | § | CIVIL CASE NO. _____ |
| v. | §<br>§ | |
| CITY OF HUMBLE, TEXAS AND<br>JOHN THOMAS COX, JR.<br>    *Defendants* | §<br>§<br>§<br>§ | JURY DEMANDED |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Christopher W. Hanna files this Original Complaint against Defendants City of Humble, Texas and John Thomas Cox, Jr. in connection with their violations of the Plaintiff's civil rights and the injuries he suffered as a result of the excessive force used during his detention by the Humble Police Department on June 24, 2022. *See* 42 U.S.C. § 1983.

**PARTIES**

1. Plaintiff Christopher W. Hanna is an individual resident of Harris County, Texas.

2. Defendant City of Humble, Texas is a governmental entity and municipality located in Harris County, Texas. It may be served with process by serving the City's Mayor Norman Funderburk, City Manager Jason Stuebe, and/or City Secretary Maria Jackson at 114 W. Higgins Street, Humble, Texas 77338.

3. Defendant Humble Police Department is a municipal governmental agency and department operating within Harris County, Texas, and is responsible for law enforcement. It may be served with process by serving Chief of Police Ken Theis at 310 N. Bender Avenue, Humble, Texas 77338.

4. Defendant John Thomas Cox, Jr. is an individual resident of Harris County, Texas. He may be served with process at 2134 Hickory Manor Drive, Huffman, Texas 77336, or wherever

he may be found.

## JURISDICTION & VENUE

5. This is a civil action arising under federal and state law. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391(b) and (c). The substantial part of the events or omissions giving rise to the Plaintiff's claims occurred within the Southern District of Texas.

## FACTUAL BACKGROUND

7. In the early morning hours of Friday, June 24, 2022, Plaintiff Christopher Hanna was a patron at Lloyd's Bar at 111 Avenue A, Humble, Texas 77338.

8. On that date, Lloyd's Bar employed two female bartenders, Jamie Poteet and Karisa Wood, who were both present until closing time. Ms. Poteet was in a dating relationship with a male patron, Jonathan Rambosek, who frequented Lloyd's Bar and who assisted Jamie in running the bar during her shifts and acted as a *de facto* bouncer or "barback."

9. At all times relevant hereto, Rambosek was present at the bar and carrying a firearm on June 24, 2022. Rambosek is reputed to be a member of the Beast Motorcycle Gang.

10. Plaintiff, who had been inside the bar, stepped outside and stood near the bar's backdoor in order to smoke cigarettes. While standing outside the bar's backdoor, Plaintiff was approached by a female who reported seeing suspicious activity in the nearby parking lot. In response, Plaintiff walked toward the vehicles in the parking lot where he saw Rambosek engaged in what Plaintiff believed was a drug deal involving cocaine.

11. Plaintiff then walked back toward the bar without incident but could not reenter.

Security camera footage shows that, as Plaintiff attempted to peaceably reenter bar's the front-door entrance, Rambosek forcibly held the entrance door shut to prevent Plaintiff from entering the bar. As he stood outside, Plaintiff heard Rambosek say, "Who is this guy? We're going to fuck him up." Upon hearing that, Plaintiff walked to the parking lot and did not make any further attempts to enter the bar.

12. Later, at approximately 2:28 a.m., the security footage shows two men on motorcycles suddenly drive into the parking lot from Higgins Street, dismount from their motorcycles, and begin assaulting Plaintiff. At the same time, Rambosek can be seen on camera walking out of the bar's front entrance toward the parking lot's Avenue A exit, while brandishing a concealed firearm to prevent Plaintiff from escaping the parking lot.

13. During the assault, one of the assailants, Alex Johnson, attacked Plaintiff with a metal chain. Johnson is reputed to be a member of the Chosen Few Motorcycle Club and had been in a relationship with Ms. Wood. In self-defense, Plaintiff ran to his truck to retrieve his handgun and fired two shots in the general direction of Johnson while he was on his motorcycle. Plaintiff intentionally aimed and fired his handgun so as to miss Johnson. The two assailants fled on their motorcycles.

14. Upon information and belief, after Plaintiff was initially prevented from reentering the bar, Ms. Wood and/or Rambosek called the two assailants to notify them that Plaintiff was in the parking lot. In the moments before the two assailants arrived, Ms. Wood and another female patron attempted to confront Plaintiff in the parking lot as he hid behind a truck. Ms. Wood subsequently went to sit inside of her vehicle. She was only several feet away from the assailants in the moments immediately before, during, and after the assault occurred.

15. After defending himself from the assailants, Plaintiff called 911 to report the

incident, stating that he had been assaulted after attempting to hide from the two assailants under a vehicle in the parking lot. Plaintiff identified himself to the 911 operator and admitted to firing two rounds from his gun.

16. Ms. Wood and Rambosek each called 911 at the same time to report Plaintiff for firing his gun. Ms. Wood told the 911 operator that Plaintiff got in a fight with her "friends."

17. Three units were dispatched from the Humble Police Department to Lloyd's Bar, including police officers John Thomas Cox, Jr., Jessica Lambert, and Tuan Hoang.

18. Defendant Officer John Thomas Cox, Jr. was the first officer to arrive at approximately 2:33 a.m., and he immediately approached Plaintiff who was unarmed and standing in the middle of the parking lot. Officer Cox's body camera captured the Plaintiff's face and head covered with blood as a result of the blows to his head. Having previously placed his handgun on the ground, Plaintiff explained to Officer Cox that he had been assaulted by two bikers and alerted him to the location of his handgun. Officer Cox then unloaded the Plaintiff's handgun, leaving it on the ground. Officer Cox directed Plaintiff to sit on the curb next to the bar's backdoor entrance, and Plaintiff complied.

19. As Plaintiff sat on the curb, Officer Cox briefly walked over to Ms. Wood, who was still seated inside of her vehicle. Ms. Wood told Officer Cox that Plaintiff started "swinging" at her "friends" on motorcycles. But she refused to identify her friends or to telephone them so as to obtain their account of the incident. On further questioning by Officer Cox, Ms. Wood contradicted her initial statements to Officer Cox and the 911 operator, pretending not to know the two assailants at all, "I don't know where they went, I don't know who they were." Realizing she was wary of cooperating, Officer Cox emphasized to her that the unknown assailants "are my complaining witnesses" and reiterated the fact that Plaintiff had been assaulted: "He definitely got

beat up. Somebody beat him up." Nevertheless, Officer Cox allowed Ms. Wood to go back inside the bar.

20. At 2:37 a.m., Officer Cox approached Plaintiff as he sat on the curb, still visibly bleeding from his injuries and intoxicated. Without requesting assistance from his fellow officers, Officer Cox asked Plaintiff to stand up. Plaintiff then stood to his feet while holding a cigarette in his left hand and a lighter in his right hand. In doing so, Plaintiff placed his hands up in a non-threatening position, with the palms of his hands open and facing out towards Officer Cox. But he did not announce or verbalize that he intended to place handcuffs on Plaintiff. As he moved closer to Plaintiff, Officer Cox reached out with his left hand and grabbed Plaintiff's right wrist, saying, "I'm just gonna go ahead and detain you real quick." Plaintiff asked, "Am I under arrested?" In the next instant, Officer Cox released Plaintiff's wrist and struck him in the head with such force that Plaintiff flew backwards onto the ground.

21. The security camera and body camera, together, captured Officer Cox simultaneously using his left hand to push and release Plaintiff's right arm away from the Plaintiff's body as Officer Cox moved forward to strike with his right hand while gripping a pair of handcuffs. From the body camera footage, it appears Officer Cox had sufficient control to place the handcuffs on Plaintiff's right wrist but chose to strike him instead. The footage also demonstrates that Officer Cox, at 6 feet, 2 inches tall, is considerably larger than Plaintiff, who stands 5 feet, 8 inches.

22. Because he was standing stationary when he was struck, Plaintiff's legs came out from under him and his head hit the ground. With Plaintiff lying face down on the ground, Officer Cox proceeded to kneel on top of Plaintiff and grabbed the back of his head. As Officer Lambert approached the two men, Officer Cox shouted at Plaintiff, "I just told you to turn around and put

5

your hands behind your back." Officer Cox never gave any such command, but said that he had in order to deceive Officer Lambert into thinking that Plaintiff was resisting arrest—and thereby manufacture a pretext for using force against Plaintiff. The security camera footage shows that Officer Cox then repeatedly slammed Plaintiff's head and face into the ground while kneeling on top of him.

23. Believing that only his body camera was recording the events, Officer Cox continued to yell at Plaintiff to justify the excessive force and make it sound as though Plaintiff was resisting: "Turn around and put your fucking hands behind your goddamn back or I am going to kick the shit out of you. You understand?" Officer Cox continued to mispresent his prior announcements and commands to Plaintiff, "I told you to turn around, son . . . . I don't give a fuck. You don't do that. You don't put your fucking hands up." No force or threat of force was used by Plaintiff against Officer Cox.

24. Officer Cox subsequently handcuffed Plaintiff while on the ground and then placed him into the back of Officer Lambert's patrol vehicle. At that time, Plaintiff was not under arrest or charged with a crime. Thereafter, Officer Cox went inside the bar and interviewed Rambosek, Ms. Wood, and Ms. Poteet in an *ad hoc* effort to establish some basis to arrest Plaintiff and charge him with a crime. Inside the bar, Rambosek refused to provide his name to Officer Cox or act as a complaining witness but did provide the allegations which Officer Cox relied on to charge Plaintiff with aggravated assault with a deadly weapon. Ms. Wood again refused to identify the two assailants who she had described as her friends. However, she reluctantly agreed to act as the complaining witness for criminal charges against Plaintiff.

25. At approximately 2:53 a.m., Plaintiff was brought to the Humble Police Department to be booked and was later transferred to county jail. Plaintiff received treatment for his injuries

and was released on bail on Sunday, June 26, 2022.

26. The Harris County District Attorney's Office charged Plaintiff with felony aggravated assault on June 24, 2022, alleging he threatened "Karisa Wood with imminent bodily injury by using and exhibiting a deadly weapon." No one else was ever charged in connection with the incident.

27. The initial incident report prepared by Officer Cox omits any mention or allegation that Plaintiff was noncompliant and/or resisted arrest. At the time, Officer Cox completely failed to report and document his use of force.

28. On July 22, 2022, Humble Police Chief Ken Theis issued a public statement endorsing Officer Cox's use of force in detaining Plaintiff. Chief Theis also published edited clips and excerpts of the security camera and body camera footage in conjunction with his on-camera interview with the Montgomery County Police Reporter. In his statements, Chief Theis insinuated that Plaintiff resisted Officer Cox's command to turn around and put his hands behind his back, despite the fact that Officer Cox never commanded him to do so.

29. On or about July 27, 2022, Chief Theis initiated an administrative investigation to determine whether Officer Cox violated the Humble Policy Department's policies in connection with his arrest of Plaintiff.

30. On August 11, 2022, Officer Cox submitted his signed statement in connection with the investigation. To justify his use of force, Officer Cox misrepresented and exaggerated both his conduct and the Plaintiff's conduct. For example, Officer Cox repeated his false assertion that he instructed Plaintiff "to stand up, turn around, and put his hands behind his back." Elsewhere, Officer Cox contradicted his own initial decision to leave Plaintiff sitting unattended in the parking lot: "Due to the [Plaintiff] admittedly committing a felony with a deadly weapon while intoxicated

7

coupled with his evasive behavior, I knew [Plaintiff] posed a substantial flight risk." In brief, Officer Cox denied any responsibility for striking Plaintiff and minimized the disproportionate use of force, explaining, "I used the palm of hand [sic] to push the [Plaintiff] back onto the grassy area behind him."

31. On or around August 11, 2022, Detective Damian Brown telephoned Plaintiff to obtain his statement in connection with the investigation initiated by Chief Theis. Detective Brown advised Plaintiff that his statements could be used to bring additional criminal charges against him. Plaintiff chose not to make a statement at that time out of fear of further retribution by the department.

32. Having already publicly endorsed the force used against Plaintiff, Chief Theis ultimately accepted his department's investigation which concluded that "Officer Cox used the necessary amount of force to effect the arrest." In the end, the Humble Police Department took no action to discipline Officer Cox, despite his multiple violations of the department's use of force policies[1] and his repeated misrepresentations concerning his conduct in detaining Plaintiff on June 24, 2022.

33. On December 13, 2022, a Harris County grand jury no-billed the felony charge against Plaintiff.

34. In previous instances, Officer Cox had received reprimands for, among other things, failing to activate his body camera on in pursuit of a suspect. In July 2019, the Humble Police Department suspended Officer Cox following allegations by his sister that he violently assaulted her boyfriend. Both his sister and her boyfriend expressed their fear that Officer Cox

---

[1] The Humble Police Department's General Order regarding use of force defines "excessive force" as "[t]hat force which, when applied, its application is inappropriate or unreasonable for the operative circumstances."

8

would not face any consequences because of his status as police officer for the Humble Police Department. Incredibly, the department exonerated Officer Cox of any wrongdoing without interviewing either him or the complaining witnesses.

35. In summary, Plaintiff was the victim of a violent crime on June 24, 2022, and rightly called to report the incident to law enforcement. Rather than fulfil their duties and essential law enforcement function, Defendants, acting through Officer Cox and under color of law, violated the Plaintiff's constitutional rights and caused him to suffer serious bodily injury. The failure to discipline Officer Cox in connection the use of excessive force complained of herein permits the reasonable inference that the Humble Police Department condones the use of excessive force and has a policy of failing to properly discipline its officers.

36. Accordingly, Plaintiff brings this lawsuit to recover damages and to hold Defendants accountable for their abuse of power. In doing so, Plaintiff encourages every law enforcement and/or governmental agency with jurisdiction over the Humble Police Department to investigate the Defendants' conduct at issue in this case.

## CAUSES OF ACTION

37. Every paragraph below is cumulative of each and every paragraph preceding it.

**I.  Civil Rights Violation, 42 U.S.C. § 1983: Excessive Use of Force**

38. Under 42 U.S.C. § 1983, an individual may assert a cause of action for violations of a United States constitutional right by a person acting under color of state law. To establish a claim under 42 U.S.C. § 1983, plaintiff must demonstrate: (1) a violation of the United States Constitution or federal law; and (2) that the violation was committed by someone acting under color of state law. *See Atteberry v. Nocona Gen. Hosp.,* 430 F.3d 245, 252-53 (5th Cir. 2005) (internal citations omitted).

39. Here, Defendants committed constitutional violations while acting under the color of law. Defendants acted with deliberate indifference and in a manner not objectively reasonable in light of Plaintiff's constitutional rights.

40. Specifically, Plaintiff asserts the method and basis of the Plaintiff's detention and/or arrest and Defendants' infringement on Plaintiff's federal and state constitutional rights are illegal. The Fourth Amendment of the United States Constitution and the equivalent Texas constitutional provision guarantee the security of persons from unreasonable searches and seizures. *See* U.S. Const. amend. IV, § 4; Tex. Const. art. 1, § 9; *see also Tennessee v. Garner,* 471 U.S. 1, 8 (1985) (holding that the Fourth Amendment encompasses both the right to be free from excessive force and the right to be free from unlawful seizure and arrest).

41. Therefore, Plaintiff first asserts an excessive force claim by establishing the following: (1) some injury, (2) which resulted directly and only from a use of force that was clearly excessive to the need, and (3) the excessiveness of which was objectively unreasonable. *Ontiveros v. City of Rosenberg,* 564 F.3d 379, 382 (5th Cir. 2009).

42. Officer Cox's egregious conduct and use of force was clearly excessive and not objectively reasonable in light of these facts and circumstances. Plaintiff posed no threat and did not interfere with lawful police duties in the course of Officer Cox detaining Plaintiff. Officer Cox acted unreasonably without any need to protect his personal safety or to maintain the status quo by detaining Plaintiff through disproportionate, unreasonable, and/or excessive force.

43. As a direct and proximate result of Defendants' conduct, Plaintiff has sustained damages and continues to sustain damages in an amount to be determined at trial.

**II. Civil Rights Violation, 42 U.S.C. § 1983: Failure to Supervise and Train Officers and/or Custom of Condoning the Use of Excessive Force (City of Humble)**

44. To support a claim based upon an official custom or policy, a plaintiff must plead

facts showing that (1) a policy or custom existed; (2) the governmental policy makers actually or constructively knew of its existence; (3) a constitutional violation occurred; and (4) the custom or policy served as the moving force behind the violation.

45. Plaintiff had the following established rights at the time of the complained of conduct; (a) the right to be secure in his person from unreasonable seizure through excessive force, under the Fourth Amendment, (b) the right to bodily integrity and the right to be free from excessive force by law enforcement under the Fourteenth Amendment, and (c) the right to be free from malicious prosecution under the Fourth and Fourteenth Amendments.

46. Defendants City of Humble, Texas and the Humble Police Department knew or should have known of these rights at the time of the complained of conduct as they were established at that time. The acts or omissions of these Defendants, as described herein, intentionally deprived Plaintiff of his constitutional and statutory rights and caused him other damages.

47. Defendants are not entitled to qualified immunity for the conduct complained of herein. At all times relevant hereto. Defendant City of Humble, Texas was a policymakers for the Humble Police Department and established policies, procedures, customs and/or practices in that capacity. These Defendants developed and maintained policies, procedures, customs and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, which were moving forces behind and proximately caused the violations of Plaintiff's constitutional and federal rights, as set forth herein, and in other claims, and resulted from a conscious or deliberate choice to follow a course of action from among various available alternatives.

48. Defendants have created and tolerated an atmosphere of lawlessness and have developed and maintained long-standing, department-wide customs, law enforcement-related

policies, procedures, customs, practices and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff.

49. The City of Humble has a custom, policy, practice, and procedure of using excessive force on individuals and not disciplining or training officers adequately and is therefore liable under 42 U.S.C. §§ 1983 and 1988. There is a pattern and practice of excessive force and condoning excessive force. There is a pattern and practice of charging suspects with resisting arrest, failure to identify, assault on a peace officer, and other crimes to cover up excessive force.

50. Considering the duties and responsibilities of those police officers who participate in arrests and prepare police reports of alleged crimes, the need for specialized training, supervision and discipline (when necessary) is apparent. Moreover, the inadequacy of training, supervision and/or discipline is so likely to result in the violation of constitutional and federal rights such as those described herein that the failure to provide such specialized training, supervision and/or discipline is deliberately indifferent to those rights.

51. Defendants' failure to discipline Officer Cox following his use of excessive force against Plaintiff suggests that Defendants condoned the excessive use of force and have a policy of failing to properly discipline its officers. Defendants also had reason to know that Officer Cox made multiple false statements in connection with his use of excessive force, the criminal charges brought against Plaintiff, and the subsequent investigation by the Humble Police Department.

52. As a direct and proximate result of Defendants' conduct, Plaintiff has sustained damages and continues to sustain damages in an amount to be determined at trial.

### III.   Assault (Officer Cox)

53. Pursuant to Texas law, the civil tort of assault requires the same elements as criminal assault. Assault is defined as when a person, (1) intentionally, knowingly, or recklessly

causes bodily injury to another, (2) intentionally or knowingly threatens another with imminent bodily injury, or (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

54. Here, Officer Cox intentionally, knowingly, or recklessly caused Plaintiff's bodily injuries by violently striking Plaintiff.

55. Officer Cox's unjustified and unprovoked actions constitute criminal and civil assault for which Plaintiff seeks to recover actual and exemplary damages.

### IV.     Gross Negligence (Officer Cox)

56. Pursuant to Texas law, gross negligence is defined as an act or omission involving an extreme degree of risk where the actor has actual awareness of the risk but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others. *See* Tex. Civ. Prac. & Rem. Code § 41.001(11).

57. Officer Cox owed a duty to Plaintiff in the course of his law enforcement duties, which entailed, in part, not to engage in excessive force. However, Officer Cox breached that duty and was grossly negligent when wrongfully assaulting Plaintiff. Such actions by Officer Cox involve an extreme degree of risk to Plaintiff and exemplify Officer Cox's conscious indifference to the constitutional rights, physical safety, and physical and mental welfare of Plaintiff.

58. As a direct and proximate result of Officer Cox's conduct, Plaintiff has sustained damages and continues to sustain damages in an amount to be determined at trial.

### JOINT AND SEVERAL LIABILITY

59. Defendants have combined to cause injury and damage to Plaintiff. Defendants are each culpable for the harm and loss to Plaintiff, and Plaintiff seeks joint and several liability

between the Defendants to make Plaintiff whole again.

## COMPENSATORY DAMAGES

60. Plaintiff seeks to recover the following compensatory damages proximately caused by the Defendants' conduct:

    a. past and future medical expenses;

    b. past and future loss of earning capacity;

    c. past and future loss of household services;

    d. past and future physical pain and suffering;

    e. past and future mental anguish;

    f. past and future impairment; and

    g. past and future disfigurement.

61. Plaintiff requests an award of all actual, incidental, direct, consequential, compensatory, economic, special, nominal, general, and emotional damages.

## EXEMPLARY DAMAGES

62. Plaintiff would further show that the acts and omissions of Defendants complained of herein were committed with malice or reckless indifference to the federal and state constitutions and protected rights of Plaintiff.

63. In order to punish Defendants from engaging in such practices and to deter such future actions and omissions, Plaintiff seeks recovery from Defendants of exemplary damages. *See* Tex. Civ. Prac. & Rem. Code § 41.003(a)(3) (awarding damages with gross negligence).

## ATTORNEYS' FEES

64. Plaintiff is entitled to recover from the Defendants all reasonable and necessary attorneys' fees and court costs incurred in the preparation and prosecution of this action from

inception of this matter through completion of litigation, including any appeals. *See* 42 U.S.C. § 1988 (allowing for attorneys' fees under 42 U.S.C. § 1983).

### CONDITIONS PRECEDENT

65.   All conditions precedent to the Plaintiff's recovery requested herein have been satisfied or have occurred.

### NOTICE TO PRESERVE EVIDENCE

66.   Plaintiff hereby requests and demands that Defendants and their agents, attorneys, and insurers preserve, maintain, and place a litigation hold on all documents, communications, tangible things, electronically stored information, and/or other evidence arising out of or related to the incident that is the basis of this lawsuit. Defendants should preserve all phones, computers, tablets, and other electronic devices containing relevant information. Failure to preserve such information and items may constitute spoliation of the evidence and may subject Defendants to sanctions.

### JURY DEMAND

67.   Plaintiff demands a jury trial on all issues that may be tried to a jury.

### PRAYER

Plaintiff asks the Court for the relief sought herein and prays that Defendants be cited to appear and upon final trial Plaintiff be awarded judgment against Defendants for:

   a. compensatory damages;

   b. exemplary damages;

   c. attorneys' fees and court costs;

   d. pre- and post-judgment interest; and

   e. all other relief to which Plaintiff is entitled.

Respectfully submitted,

**POUPORE LAW FIRM PLLC**

*/s/ Jourdain Poupore*
Jourdain Poupore
Texas Bar No. 24094901
Federal Bar No. 2717697
3233 W. Dallas St., Suite 313
Houston, Texas 77019
Tel: 713-922-1655
service@poupore.law

***Attorney for Plaintiff***

Filed: June 23, 2024